UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                                                )
                                                                      )
INTERBANK FUNDING CORP., *et al.*,                                    )
                                                                      )
                    Debtors.                                          )
                                                                      )
_____                                  )
                                                                      )
IBF FUND LIQUIDATING, LLC,                                            )
                                                                      )
                    Plaintiff,                                        )
                                                                      )
         -against-                                                    )        No. 07-CIV-10692 (WHP)
                                                                      )
CHADMOORE WIRELESS GROUP, INC., *et al.*,                             )
                                                                      )
                    Defendants.                                       )
_____                                  )
                                                                      )
ROBERT MOORE,                                                         )
                                                                      )
                    Third-Party Plaintiff,                            )
                                                                      )
         -against-                                                    )
                                                                      )
KAYE SCHOLER LLP, *et al.*,                                           )
                                                                      )
                    Third-Party Defendants.                           )
_____                                  )

## APPELLANT'S BRIEF

BAINTON MCCARTHY LLC
J. Joseph Bainton, Esq. (JB-5934)
26 Broadway, Suite 2400
New York, NY 10004
(212) 480-3500
(212) 480-9557 (fax)

*Attorneys for Defendant Robert Moore*

# TABLE OF CONTENTS

Table of Authorities...................................................................................... iii

Jurisdictional Statement................................................................................ 1

Standard of Review ....................................................................................... 1

Statement of the Issues.................................................................................. 2

Statement of the Case.................................................................................... 2

Statement of Facts......................................................................................... 3

Creation of the Plaintiff................................................................................. 4

The Plan of Reorganization........................................................................... 4

The US Mills Transaction, Sunset, and Chadmoore........................................ 6

Sunset Defaults............................................................................................. 9

This Adversary Proceeding............................................................................ 10

Argument...................................................................................................... 13

    I.     The Bankruptcy Court Erred By Failing to Determine Moore's
            Motion Challenging Its Subject Matter Jurisdiction Before
            Considering The Competing Motions for Summary Judgment......... 13

    II.    The Approach to Resolving the Moore Claims Consistent with the
            Mandate of Federal Rule of Civil Procedure 1 Is To Accept Moore's
            Consent To Jurisdiction and At an Early Date Try The Moore Claims,
            Counterclaims and Third-Party Claims in an Article III Court to the
            Jury Moore Timely Demanded............................................. 14

    III.   The Bankruptcy Court Does Not Have Jurisdiction Over Any of the
            Moore Claims................................................................... 16

         A.    The Moore Claims Do Not Arise In, or Relate to the Debtors'
                Cases......................................................................... 17

         B.    The Plan Does Not Vest The Bankruptcy Court with Subject
                Matter Jurisdiction over the Moore Claims............................ 22

C.    The Bankruptcy Court's Specific Referral Order Does Not Vest The Bankruptcy Court with Subject Matter Jurisdiction Over the Moore Claims.................................................. 25

D.    The Sale Orders Do Not Vest the Bankruptcy Court with Subject Matter Jurisdiction Over the Moore Claims.............. 27

IV.    Moore Cannot Be Liable to Fund LLC For Signing A Document That Fund LLC Knew Was Unenforceable....................................... 30

A.    The Bankruptcy Court Misapprehended The Law Of Agency.........................................................................31

B.    The Bankruptcy Court's October Decision Ignored The Settled Principle There Can Be No Implied Warranty of a Legally Unenforceable Contract............................................. 34

V.    The Bankruptcy Court's Injunction and Contempt Related Judgments Were Clearly Erroneous Because They Were Based Upon Speculation of Counsel Not Admissible Evidence.................................. 35

VI.    The Bankruptcy Court Abused Its Discretion and Violated Rule 1 of the Federal Rules of Civil Procedure By Permitting So Much Satellite Litigation While Preventing an Early and Efficient Trial On The Merits.................................................................................. 37

Conclusion.................................................................................. 39

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Dung,*
    52 N.Y. 494, 500 (1873) ................................................................**34**

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.),*
    266 F.3d 388, 390 (5th Cir. 2001)................................................**18**

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),*
    372 F.3d 154, 168 (3d Cir. 2004) ...............................................**21**

*Bowater S.S. Co. v. Patterson,*
    303 F.2d 369, 374 (2d Cir. 1962) ...............................................**27**

*Bray v. City of New York,*
    356 F. Supp. 2d 277, 286 (S.D.N.Y. 2004).................................**37**

*Broughton v. Dona,*
    101 A.D.2d 897, 898 (App. Div. 1st Dep't 1984).................**30, 32, 35**

*Brunner v. New York State Higher Educ. Services,*
    831 F.2d 395, 396 (2d Cir. 1987) .................................................**1**

*Celotex Corp. v. Edwards,*
    514 U.S. 300, 310 (1995)...........................................................**18**

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,*
    94 N.Y.2d 541, 543-44, 729 N.E.2d 683 (2000) .......................**36**

*Crigger v. Fahnestock & Co.,*
    230 R.3d 230, 234 (2d Cir. 2006)...............................................**33**

*Danann Realty Corp. v. Harris,*
    5 N.Y.2d 317, 322 (1959)...........................................................**33**

*Da Silva v. Kinsho Int'l Corp.,*
    229 F.3d 358, 362 (2d Cir. 2000) ...............................................**30**

*Duncan v. Peninger,*
    624 F.2d 486, 490 (4th Cir. 1980), cert. denied 449 U.S. 1078 (1981).............**32**

*Duryea Power Co. v. Sternbergh,*
    18 U.S. 299, 302 (1910) .............................................................**27**

*Ellison v. Georgia R.R. Co.,*
    **87 Ga. 691, 13 S.E. 809 (Ga. 1891) (Bleckley, C.J.)**............................................**37**

*Enter. Prods. Operating, L.P. v. Enron Gas Liquids Inc. (In re Enron Corp.),*
    **306 B.R. 33, 37 (S.D.N.Y. 2004)**..................................................................**1**

*Falise v. Am. Tobacco Co.,*
    **241 B.R. 48, 57 (E.D.N.Y. 1999)** ...............................................................**19**

*Feld v. Zale Corp. (In re Zale Corp.),*
    **62 F.3d 746, 753 (5th Cir. 1995)** ...............................................................**27**

*Finger v. County of Sullivan Indus. Dev. Agency (In re Paramount Hotel Corp.),*
    **319 B.R. 350, 356 (Bankr. S.D.N.Y. 2005)** ...............................................**19**

*Fitzgibbon v. Abatelli Real Estate,*
    **214 A.D.2d 642, 644 (App. Div. 2d Dep't 1995)** .......................................**32**

*Friedberg v. Lewittes,*
    **192 B.R. 338, 341 (S.D.N.Y. 1996)** ...........................................................**22**

*Gallucci v. Grant (In re Gallucci),*
    **931 F.2d 738, 743-44 (11th Cir. 1991)**.......................................................**27**

*Gonzalez v. Crosby,*
    **545 U.S. 524, 534 (2005)**............................................................................**30**

*Grimes v. Graue (In re Haws),*
    **158 B.R. 965 (Bankr. S.D. Tex. 1993)** ......................................................**21**

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund,*
    **527 U.S. 308, 333 (1999)** ..........................................................................**36**

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),*
    **172 B.R. 748, 757 (S.D.N.Y. 1994)** ...........................................................**19**

*Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Coy, (In re Johns-Manville Corp.),*
    **7 F.3d 32, 34 (2d Cir. 1993)**................................................................**18, 22**

*IAM v. Eastern Air Lines,*
    **121 Bankr. 428, 432 n.5 (S.D.N.Y. 1990), aff'd 923 F.2d 26 (1991)**...................**1**

*IBF Liquidating LLC, et al. v. Branch Banking Trust & Co.,*
    **No. 04 Civ. 5848 (JES) (S.D.N.Y. Mar. 11, 2005), Transcript, Doc. No. 12 at 23:21- 25, 24:1-6.)**.................................................................................**30**

*In re Digital Impact, Inc.,*
    **223 B.R. 1, 11 (Bankr. D. Okla. 1998)**.................................................................**27**

*In re Oil Spill by the Amoco* Cadiz *Off the Coast of France on March, 16, 1978,*
    **954 F.2d 1279, 1305 (7th Cir. 1992)**.................................................................**38**

*In re U.S.H. Corp.,*
    **280 B.R. 330, 334 (Bankr. S.D.N.Y. 2002)** .................................................**22**

*Kassover v. Prism Venture Partners, LLC,*
    **336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006)**.........................................................**18**

*Liberian Int'l Ship & Corp. Registry, LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.),*
    **No. 02 Civ. 7108 (RPP), 2004 U.S. Dist. Lexis 366, (S.D.N.Y. Jan. 14, 2004)**.....**13**

*Liberty Mut. Ins. v. Lone Star Indus.,*
    **313 B.R. 9, 15 (D. Conn. 2004)**......................................................................**18**

*Mitsubishi International Corp. v. Cardinal Textile Sales, Inc.,*
    **14 F.3d 1507 (11th Cir. 1994)** ......................................................................**36**

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),*
    **4 F.3d 1095, 1101-02 (2d Cir. 1993)**..........................................................**15**

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),*
    **335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005)** ............................................**18, 19, 21**

*Pettibone Corp. v. Easley,*
    **935 F.2d 120, 122 (7th Cir. 1991)**.................................................................**19**

*Portfolio Lease Funding Corp. No. 1 v. Seagate Tech., Inc. (In re Atl. Computer Sys., Inc.),*
    **163 B.R. 704,706 (Bankr. S.D.N.Y. 1994)** .................................................**22**

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
    **458 U.S. 50 (1982)**......................................................................................**17**

*Schlaifer Nance & Co. v. Estate of Warhol,*
    **119 F.3d 91, 98 (2d Cir. 1997)**.....................................................................**33**

*Schoenberg v. Shapolsky Publishers,*
    **971 F.2d 926, 934-35 (2d Cir. 1992)** ............................................................**38**

*Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co.),*
    **No. 01 Civ. 165 (WHP), 2002 U.S. Dist. Lexis 8609,**
    **(S.D.N.Y. May 14, 2002)**..................................................................**18, 20**

*Standish v. Gold Creek Mining Co.,*
    **92 F.2d 662, 663 (9th Cir. 1937)** .....................................................**27**

*Steel Co. v. Citizens for a Better Env't,*
    **523 U.S. 83, 94-101 (1998)** ..............................................................**13**

*UNR Indus., Inc. v. Continental Casualty Co.,*
    **942 F.2d 1101, 1107 (7th Cir. 1991)**...............................................**38**

*Urban Box Office Network, Inc. v. Interfase Managers, LP (In re Urban Box Office Network, Inc.),*
    **No. 01 Civ 8854 (LTS) (THK), 2003 U.S. Dist. Lexis 22675,**
    **(S.D.N.Y. Dec. 18, 2003)**.................................................................**18**

*U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n (In re U.S. Lines, Inc.),*
    **197 F.3d 631, 637 (2d Cir. 1999)** .....................................................**20**

**Statutes and Rules**

28 U.S.C. § 151...................................................................................1

28 U.S.C. § 157(b)(1) .........................................................................1

28 U.S.C. § 157(c)(1)...........................................................................1

157 (b)........................................................................................16, 17

28 U.S.C. § 158 ..................................................................................1

28 U.S.C. § 1344.............................................................................24, 29

28 U.S.C. §§ 1334(b).......................................................................16, 17

Fed. R. Bankr. P. 9033(d)....................................................................1

Fed. R. Bankr. P. 8013........................................................................1

Fed. R. Civ. P. 26.......................................................................11, 14, 37

**Other Authorities**

Restatement (Second) of Agency § 329 at comment j......................................35

Restatement (Second) of Agency, §§ 329, 331)..........................................32

Restatement (Third) of Agency § 6.10 (2006)................................................ 31

Defendant-Appellant Robert Moore ("Moore") respectfully submits this brief in support of his appeal from three "Final Judgments" of the United States Bankruptcy Court for the Southern District of New York (Hon. Burton R. Lifland, presiding), namely (1) the Judgment entered October 9, 2007 (Document Number: 185) holding Moore in contempt and imposing sanctions; (2) the Final Judgment entered October 9, 2007 (Document Number: 188) granting summary judgment in favor of Fund LLC and against Moore on Count VI of the adversary complaint and otherwise staying this action, and (3) the Judgment entered October 18, 2007 (Document Number: 191) in favor of Fund LLC and against Moore for fees and costs.

### Jurisdictional Statement

This Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158.

### Standard of Review

Pursuant to Federal Judgeship Act of 1984, 28 U.S.C. § 151, bankruptcy courts have jurisdiction to adjudicate and render final orders and judgments in matters constituting core proceedings pursuant to 28 U.S.C. § 157(b)(1). In proceedings involving core matters, a district court reviews the bankruptcy court's findings of facts under a "clearly erroneous" standard and its conclusions of law de novo. *See Brunner v. New York State Higher Educ. Services*, 831 F.2d 395, 396 (2d Cir. 1987). Bankruptcy courts may also hear matters that are not core, but are otherwise related to the bankruptcy case. *See* 28 U.S.C. § 157(c)(1). In these non-core related matters, the district court reviews both factual findings and legal conclusions of the bankruptcy court de novo. *See* § 157(c)(1); *see also* Bankruptcy Rule 9033(d); *IAM v. Eastern Air Lines*, 121 Bankr. 428, 432 n.5 (S.D.N.Y. 1990), *aff'd* 923 F.2d 26 (1991). Additionally, mixed questions of fact and law are subject to de novo review. *See Enter. Prods. Operating, L.P. v. Enron Gas Liquids Inc. (In re Enron Corp.)*, 306 B.R. 33, 37 (S.D.N.Y. 2004); Fed. R. Bankr. P. 8013.

Here, Moore contends that the Bankruptcy Court lacked subject matter jurisdiction over the entire adversary proceeding to which no bankrupt is a party and otherwise committed plain errors of law. This Court should therefore apply a de novo standard of review.

## Statement of the Issues

1.  Whether the Bankruptcy Court erred by failing to determine Moore's Motion challenging its subject matter jurisdiction before considering competing motions for summary judgment.

2.  Whether the Bankruptcy Court erred in holding that it has jurisdiction over the subject matter of this adversary proceeding without addressing the arguments advanced by Moore in his motion to dismiss for lack of subject matter jurisdiction.

3.  Whether the Bankruptcy Court erred in holding that Moore can be liable to Fund LLC for signing a document that Fund LLC knew was unenforceable.

4.  Whether the Bankruptcy Court erred in entering a Preliminary Injunction that was in all practical effect an Order of Attachment in a breach of contract action

5.  Whether the Bankruptcy Court erred in finding Moore in contempt based on speculation of counsel in the absence of admissible evidence.

6.  Whether the Bankruptcy Court abused its discretion and violated Rule 1 of the Federal Rules of Civil Procedure by permitting satellite litigation while preventing an early and efficient trial on the merits of the case.

## Statement of the Case

Moore appeals from the entry of three "judgments" against him, two entered on October 9, 2007 (Doc. Nos. 185, 188), and one entered on October 18, 2007 (Doc. No. 191). Respectively, on October 16, 2007 and October 22, 2007 Moore timely filed notices of appeal from all three "judgments." (Doc Nos. 189, 190, 193.)

### Statement of Facts

This is a relatively simple appeal that may initially appear complicated based upon the events pre-dating the events giving rise to this action, namely the creation of the Plaintiff as transferee of assets of bankruptcy estates; a sale by Plaintiff of certain assets; and the signing by Moore of a "credit enhancement" in connection with that sale on behalf of a public company, Defendant Chadmoore Wireless Group Inc. ("Chadmoore") (the "Chadmoore Put"). At all relevant times Chadmoore (a) had been dissolved; (b) was in the process of winding up its affairs; and (c) disclosed all facts relating to its status as a dissolved corporation in its filings with the United States Securities and Exchange Commission (the "SEC").

More importantly, Plaintiff, whose sole manager, Third-Party Defendant Arthur J. Steinberg ("Steinberg") is a prominent bankruptcy lawyer and a member of Third-Party Defendant Kaye Scholer LLP ("Kaye Scholer"), admitted under oath that he knew that Chadmoore was in dissolution prior to the execution of the Chadmoore Put.

Moore improvidently signed the Chadmoore Put as "window dressing" for the Bankruptcy Court to aid a long time friend believing that Steinberg knew far better than he did that the Chadmoore Put was unenforceable.

Chadmoore was not represented by counsel in connection with the execution of the Chadmoore Put and no standard opinion of counsel as to its enforceability was sought, much less obtained.

Consistent with the theme of "window dressing," only perfunctory information about the Chadmoore Put was provided to the Bankruptcy Court in connection with Plaintiff's motion to approve the sale of these assets. The Bankruptcy Court was not told by Plaintiff that Chadmoore had been dissolved and was in the process of winding up its affairs.

3

**Creation of the Plaintiff**

On June 7, 2002, Interbank Funding Corp. ("IBF"), IBF VI-Secured Lending Corporation ("SLC"), and IBF Collateralized Finance Corporation ("CFC" and together with SLC, the "Funds"), filed voluntary petitions under chapter 11 of the Bankruptcy Code. (*See* No. 02-41590 (BRL), Doc. No. 1, *et seq.*, Bankr. S.D.N.Y. (the "IBF Bankruptcy Case").) On November 4, 2002, IBF Premier Hotel Group, Inc. (together with IBF and the Funds, "Debtors") filed their voluntary petitions under chapter 11 of the Bankruptcy Code, which were jointly administered with the IBF Bankruptcy Case.

The SEC filed an civil enforcement proceeding against the Debtors in the District Court styled *Securities and Exchange Commission v. IBF Collateralized Finance Corp., et al.*, No. 02 Civ. 5713 (JES), S.D.N.Y. (the "SEC Action"). By an order dated December 5, 2002, the District Court appointed Steinberg as Investment Company Act trustee (the "ICA Trustee").

**The Plan of Reorganization**

A joint liquidating plan with respect to the Debtors (as amended, the "Plan") was confirmed by the Bankruptcy Court by order dated August 14, 2003, and approved by the District Court in the SEC Action by order dated September 5, 2003. (*See* IBF Bankruptcy Case, Doc. No. 292.) Moore was never a creditor of any of the Debtors' estates and was not a party to the Plan. Pursuant to the Plan, the Debtors' assets were assigned to Plaintiff IBF Fund Liquidating LLC ("Fund LLC") and IBF Liquidating LLC ("IBF LLC" and together with Fund LLC, the "Liquidating LLCs"), two private limited liability companies organized under the laws of Delaware for the specific purpose of accepting the transfer of these assets. Steinberg is the managing member of Fund LLC.

The Plan vested the District Court with jurisdiction over the following matters:

4

(a)    the administration of each Liquidating LLC, pursuant to, _inter alia_, the Plan, the Confirmation Order, and each respective Liquidating LLC Agreement;

(b)    the disposition of the Assets transferred to each Liquidating LLC;

(c)    the distributions to be made under the Plan after the Effective Date; and

(d)    such other matters as may be related to the Plan, the administration of Claims, or the SEC Litigation, other than as set forth in Section 14.2 below (_provided, however_, that the District Court may at any time withdraw the reference of any matter, on appropriate application by the Trustee or otherwise).

(Plan § 14.1 (emphasis in original).)

The Plan vested the Bankruptcy Court with jurisdiction over the following

matters:

(a)    to hear and determine pending motions for the assumption or rejection of executory contracts or unexpired leases or the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including cure amounts, if any, required;

(b)    to hear and determine any and all objections to the allowance or estimation of Claims;

(c)    to hear and determine such litigation as may be commenced by the ICA Trustee in the Bankruptcy Court on or after the Effective Date to collect assets of the Debtors;

(d)    to hear and determine the matters specifically identified in section 14.3 hereof [concerning IBF Premier Hotel Group, Inc.];

(e)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)    to hear and determine applications for allowance of Professional Claims and all other applications for fees or reimbursement of expenses under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code (provided, however, that

5

professionals engaged by the ICA Trustee shall seek approval of their final applications for allowance of fees and expenses from the District Court);

(g)    to determine requests for the payment of Claims under section 507(a)(l) of the Bankruptcy Code, including compensation and expenses of parties entitled thereto;

(h)    such other matters as the District Court may refer to the Bankruptcy Court; and

(i)    promptly after satisfaction of the matters set forth in (a) through (h) hereof, to enter a final decree closing the Chapter 11 Cases.

(Plan § 14.2.)

On July 6, 2004, the District Court approved a stipulation among the ICA Trustee, the SEC, and the liquidating committee for the Fund LLC and IBF LLC (essentially, the former creditors' committee of the Debtors) to refer to the Bankruptcy Court "jurisdiction over matters respecting the disposition of the Assets transferred to each Liquidating LLC [*i.e.*, Fund LLC and IBF LLC]." (SEC Action, Doc. No. 78 at 3 (the "Specific Referral Order").) Moore was never served with, nor was he a party to, the Specific Referral Order.

**The US Mills Transaction, Sunset, and Chadmoore**

On March 2, 2005, Fund LLC moved the Bankruptcy Court to approve the sale of one of its assets, U.S. Mills, Inc. ("US Mills"), to Sunset Brands, Inc. ("Sunset"), pursuant to Section 363 of the Bankruptcy Code. (IBF Bankruptcy Case, Doc. No. 497.) The sale of US Mills to Sunset included a number of sale and financing agreements. While the motion described these agreements generally, Fund LLC attached to its motion papers only a copy of the merger agreement. The Bankruptcy Court approved the motion on March 29, 2005. (IBF Bankruptcy Case, Doc. No. 503.)

6

Fund LLC and Sunset failed to consummate the transaction. They then revised the sale terms. On July 14, 2005, Fund LLC filed with the Bankruptcy Court a notice of presentment and motion regarding the revised sale terms. (IBF Bankruptcy Case, Doc. No. 521.) In this motion Fund LLC briefly described how the deal was revised, but did not attach any of these revised or new documents. There was no hearing on the motion and, on July 27, 2005, the Bankruptcy Court approved the revised sale terms. (IBF Bankruptcy Case, Doc. No. 523.)

Fund LLC and Sunset failed to consummate this revised transaction. They then revised the sale terms again.

While the revised sale terms were being renegotiated, the principal of Sunset, Todd Sanders ("Sanders"), approached Moore, who had been the founder and chief executive officer of Chadmoore and remained actively involved in the winding up of its affairs following its formal dissolution.

Sanders told Moore that, to consummate the US Mills acquisition, he had borrowed $1 million from a shadowy, non-traditional third party lender. Sanders told Moore that, if the US Mills failed to close yet again, he would lose the $1 Million and be at risk of severe physical harm or death as a result of punitive measures to which the non-traditional third-party lender would likely resort should the loan become uncollectible. Specifically, Sanders told Moore that Fund LLC wanted a further credit enhancement from a third-party entity like Chadmoore to secure the Bankruptcy Court's approval for the further revised sale terms. Moore improvidently agreed to help his friend.

Three years earlier, in January of 2002, Chadmoore commenced the process of voluntary dissolution under the laws of the State of Colorado. This information was disclosed in

all of Chadmoore's SEC filings.  Moore never met Steinberg, the manager of Fund LLC, a

highly experienced and sophisticated bankruptcy attorney, but may have spoken to him briefly.

Steinberg testified in this case before the Bankruptcy Court that he knew

Chadmoore was in dissolution before Fund LLC entered into an agreement with it.  (IBF

Bankruptcy Case, Doc. No. 61, Transcript of Proceedings, Apr. 23, 2007 ("Tr."), at 65:7-12.)  In

his single call with Moore, Steinberg (or his colleague) did not press Moore further about

Chadmoore's dissolved status.  He just wanted to close the deal, as Sanders told Moore.

Fund LLC's transactional counsel never requested the opportunity to perform due

diligence on Chadmoore nor did they request information or a board resolution for the purposes

of their opinion letter regarding the sale terms.  (*See id.* at 70:3-11.)  Nor did they seek an

opinion of Chadmoore's counsel as to the enforceability of the Chadmoore Put.  Indeed,

Chadmoore had no counsel involved in the Sunset transaction.

Fund LLC's failure to perform even the barest diligence on the credit

enhancement with Chadmoore confirmed to Moore that the agreement was merely a technical

document for the benefit of Fund LLC's presentation to the Bankruptcy Court.  In short, it was

"window dressing" that both Sunset and Fund LLC knew was not enforceable.

The Chadmoore Put purported to be an agreement by Chadmoore to purchase

$2.5 million of a certain $5 million secured debenture issued by Sunset and held by Fund LLC if

-- and only if -- the principal balance of the debenture a year was not timely paid.  On November

5, 2005, Moore and Steinberg signed the Chadmoore Put.

On November 3, 2005, Fund LLC filed with the Bankruptcy Court a notice of

presentment and motion regarding the further revised sale terms.  (IBF Bankruptcy Case, Doc.

8

No. 527.) In this motion Fund LLC briefly described how the deal was further revised, but did not attach any of these revised or new documents.

Fund LLC disclosed to the Bankruptcy Court only the following limited information about the Chadmoore Put: "Fund LLC will also have the ability to 'put' up to $2.5 million of the $5 million convertible debenture to a third party arranged by Sunset. The aforesaid $2.5 million 'put' is to give the ICA Trustee assurances that this type of refinancing will occur in a relatively short time." (*Id.* at 7.) Fund LLC devoted no attention to the Chadmoore Put in its discussion why the overall sale was an exercise of sound business judgment. (*See id.* at 9-11.) In its motion Fund LLC never mentions Moore, Chadmoore or the Chadmoore Put by name; nor was the Chadmoore Put attached for the Bankruptcy Court's review.

Fund LLC knew -- but never disclosed to the Bankruptcy Court -- that Chadmoore was a public company in dissolution. Fund LLC also failed to serve the motion on Chadmoore or Moore. (IBF Bankruptcy Case, Doc. No. 528.) So, Chadmoore and Moore never had an opportunity to object to the motion or investigate the wider context in which the Chadmoore Put was executed.

There was no hearing on the motion on the further revised sale terms and, on November 9, 2005, a mere six days later, the Bankruptcy Court approved the further revised sale terms. (IBF Bankruptcy Case, Doc. No. 533.) This time, Fund LLC and Sunset closed the sale.

**Sunset Defaults**

Sunset eventually defaulted on the seller financing that Fund LLC provided to it. In the meantime, Chadmoore continued to orderly dissolve as stated in all of its SEC filings. In October of 2006, it distributed $12.25 million to its shareholders, representing a portion of a total of over $46 million distributed to date. At the time of the commencement of this action

Chadmoore had retained only $1.4 million of the cash proceeds of the sale years earlier of all of its tangible assets.

As a dissolved corporation, under Colorado law, Chadmoore could not enter into any transactions except those incident to the "winding up" of its affairs. Steinberg, an accomplished bankruptcy lawyer, testified that he believed that, as a dissolved company, Chadmoore was authorized to agree to buy out Fund LLC's position in a secured debenture if over time it proved worthless. (Tr. at 67:7-20.) Given Steinberg's background, this testimony was not worthy of belief. The Chadmoore Put was hardly a treasury bill or a similar debt security in which monies being held in escrow could be responsibly invested.

Toward the end of 2006, Fund LLC managed to sell US Mills for $9 million to Susquehanna Private Equity Investments, LLLP, a private equity firm, which was a price substantially less that Sunset had agreed to pay. (IBF Bankruptcy Case, Doc. No. 552.) The Bankruptcy Court approved that sale by order dated January 16, 2007 (together with the three prior US Mills sale orders, the "Sale Orders"). (IBF Bankruptcy Case, Doc. No. 555.)

**This Adversary Proceeding**

On February 14, 2007, Fund LLC filed with the Bankruptcy Court the adversary complaint in this action and a motion for a preliminary injunction against Moore, Chadmoore, and Stephen Radusch ("Radusch"), the former chief financial officer of Chadmoore. (No. 07-1482 (BRL), Bankr. S.D.N.Y., Doc. Nos. 1, 2 (the "Action").) The gravamen of this action was that the Chadmoore Put had not been honored.

The claims against Moore have no connection with the disposition of US Mills. Fund LLC has asserted state law claims against Moore for breach of fiduciary duty by reason of his role in causing Chadmoore to effectuate an alleged improper distribution, and for the

10

avoidance of shareholder distributions that were fraudulently transferred by Chadmoore to Moore (the "Moore Claims"). (*See id.*, Doc. No. 1 (Counts V, VI, IX-XIII).) Fund LLC also sought purported equitable relief against Moore in the form of segregation of funds and accounting that could be "helpful" in satisfying a money judgment in its favor.

Every one of the Moore Claims is a derivative claim that depends upon the proposition that the Chadmoore Put was – or could have been – an enforceable contract. All of Fund LLC's "equitable claims" are merely "helpful" to satisfying a money judgment based upon its alleged contract rights. Fund LLC does not have a liquidated debt with Chadmoore. Fund LLC is not a shareholder of Chadmoore.

Defendants Moore and Radusch moved to dismiss this action. On April 22, 2007, this Court held a hearing on Moore's and Radusch's motions and Fund LLC's motion for a preliminary injunction. The Bankruptcy Court verbally denied Defendants' motions to dismiss and granted preliminary relief on Fund LLC's "equitable claims." (Action, Doc. No. 48.) At that hearing, this Court ruled that it had subject matter jurisdiction over this action. (Tr. at 33:8-16.)

Moore served his answer, counterclaims and jury demand on May 7, 2007. (Action, Doc. No. 54.) He served and filed his third-party complaint on May 17, 2007 (Doc. No. 63.) On May 30, 2007, Moore served his amended answer and jury demand. (Doc. No. 80.) On June 5, 2007, he served his amended third-party complaint. (Doc. No. 86.)

On May 18, 2007, Moore filed a motion to dismiss for lack of subject matter jurisdiction. (Action, Doc. No. 67.) The Bankruptcy Court adjourned the hearing on and determination of that motion until after summary judgment motions the Bankruptcy Court

invited were completely briefed and then decided. The Bankruptcy Court also excused Fund

LLC from its obligations to make initial Rule 26 disclosures and otherwise stayed discovery.

Moore's Counsel suggested that the case proceed on an expedited basis and

indicated it could be ready for a jury trial within 60 days or less. Moore's counsel also pointed

out that such a trial would resolve all claims asserted by all parties. (Doc. No. 113, Transcript of

Proceedings, May 24, 2007 ("May Tr."), at 22:7-28:4.) The Bankruptcy Court rejected Moore's

application for a just, speedy and inexpensive resolution of all claims of all parties.

The Bankruptcy Court authorized and approved a settlement with Chadmoore on

September 18, 2007, and with Radusch on October 2, 2007. On October 3, The Court issued a

Memorandum Decision disposing of pending summary judgment motions. (Action, Doc. No.

184, the "October Decision".) On October 9, 2007, the Bankruptcy Court held Moore in

contempt of its "Preliminary Injunction" because he had not paid cash he swore he did not have

into escrow and imposed sanctions (Action, Doc. No. 185). The lower court then issued a final

judgment on the October Decision in favor of Fund LLC and against Moore on Count VI of the

complaint. (Action, Doc. No. 188.) On October 18, 2007, the Bankruptcy Court entered an

order in favor of Fund LLC and against Moore for additional fees and costs. (Action, Doc. No.

191.)

The Bankruptcy Court stayed further proceedings on all of Fund LLC's other

claims against Moore as to which it denied summary judgment. The Bankruptcy Court also

stayed Moore's third-party action that sought, among other relief, indemnity/contribution in

respect of the $1.8 Million judgment it granted to Fund LLC against Moore. Thus Moore is in

the position of having his assets available for execution while his third-party claims are stayed

pending the outcome of this appeal. This result is in flagrant violation of the "final judgment"

rule imposed by Federal Rule of Civil Procedure 54, made applicable to this adversary

proceeding by Bankruptcy Rule 7054.

### Argument

I.    **The Bankruptcy Court Erred By Failing to Determine Moore's Motion Challenging Its Subject Matter Jurisdiction Before Considering Competing Motions For Summary Judgment**

The Bankruptcy Court granted Fund LLC's motion for summary judgment and

subsequently held Moore in contempt of the injunction prior to resolving Moore's motion to

dismiss this adversary proceeding for lack of subject matter jurisdiction.

The Bankruptcy Court committed plain error in deferring consideration of

Moore's challenge to its subject matter jurisdiction in order to first consider other substantive

issues. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-101 (1998); *Liberian Int'l Ship &*

*Corp. Registry, LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, No. 02 Civ. 7108 (RPP),

2004 U.S. Dist. Lexis 366, at *12 (S.D.N.Y. Jan. 14, 2004).

The proposition that a federal court's jurisdiction to hear a case and controversy

must be decided prior to all other matters in litigation is well settled. *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94-101 (1998) ("The requirement that jurisdiction be established as a

threshold matter springs from the nature and limits of the judicial power of the United States and

is inflexible and without exception."); *Liberian Int'l Ship & Corp. Registry, LLC v. Allfirst Bank*

*(In re Millenium Seacarriers, Inc.)*, No. 02 Civ. 7108 (RPP), 2004 U.S. Dist. Lexis 366, at *12

(S.D.N.Y. Jan. 14, 2004).

In its October Decision, the Bankruptcy Court acknowledged that "[o]n May 18,

2007, Moore field a motion to dismiss for lack of subject matter jurisdiction the Complaint

pursuant to Rule 12(b)(6)," (October Decision, at 8 n. 7), and correctly observed that that motion

"adjourned until after the summary judgment proceedings were complete." *Id*.   To add insult to injury, the Bankruptcy Court then "stayed" consideration of that motion pending the determination of this appeal.

The Bankruptcy Court's failure to follow well settled law instructing it to examine its subject matter jurisdiction before addressing any other issue cannot be explained, but represents plain legal error.

**II.     The Approach to Resolving All the Claims Asserted in This Action Consistent with the Mandate of Federal Rule of Civil Procedure 1 Is To Accept Moore's Consent To Jurisdiction and At an Early Date Try The Moore Claims, Moore's Counterclaims and Third-Party Claims in an Article III Court Before the Jury Moore Timely Demanded.**

By the time this appeal will be decided, a year will have passed during which time Moore's life has been "placed on hold." The pendency of the presently "stayed" fraud charges makes it impossible for Moore to exploit the opportunities logically created by his founding of Chadmoore and then earning a good return on the investments of Chadmoore's public shareholders.

A technically correct response by this Court to Moore's appeal could be to vacate the three judgments and remand this case to the Bankruptcy Court instructing it to consider its subject matter jurisdiction over the Moore claims – something is should plainly have done before it did anything else.

Vacating the judgments and remanding the case would not, however, be a just or fair way to address this controversy between "David and Goliath" at this late date. Steinberg is both the client and the lawyer. Steinberg's penchant to engage in (and pay for) satellite litigation while strenuously avoiding the merits is plain from the record. That Fund LLC has successfully avoided its obligation to make its Rule 26 automatic disclosures and obtained a stay pending this

Court's decision on this appeal not only of its alleged fraud claim, but Moore's motion challenging the subject matter jurisdiction of the Bankruptcy Court is telling.

It is of course obviously true that, if the Bankruptcy Court does not have jurisdiction over the subject matter of this adversary proceeding, there is no "reference" for this Court to withdraw pursuant to 28 U.S.C. § 157(d).

It is no less true as a matter of common sense that Fund LLC's appetite to prosecute the Moore Claims will not be satiated if it is properly denied the opportunity to litigate them in an Article I Court. In other words, if the Moore Claims are dismissed for want of bankruptcy court subject matter jurisdiction, as a practical matter, there is little doubt that Fund LLC will then pursue them in a court of competent jurisdiction thereby perpetuating the Sword of Damocles it has been dangling over Moore's head for far too long.

Even if the Bankruptcy Court somehow had initial subject matter jurisdiction over the Moore Claims, Moore's timely demand for a jury trial of those state law based claims precludes the Bankruptcy Court from presiding over the trial. So, sooner or later, the Moore Claims have to be addressed in an Article III Court. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101-02 (2d Cir. 1993).

From the outset of this case Moore has sought no more than an early trial of what he views as baseless claims. Thus at a hearing on May 24, 2007, Moore's Counsel observed that Moore needed to conduct no more than 3 or 4 depositions and receive Fund LLC's documents (which would presumably all be included in its automatic disclosures) so that the case could be ready for trial in about 60 days. (Doc. No. 113, May Tr., at 22:12-23:4.) Neither Fund LLC nor the Bankruptcy Court had any interest in a just, speedy, and inexpensive determination of all of

the Moore Claims and Moore's counterclaims and third-party claims against Fund LLC, Kaye Scholer and Steinberg.

The expressly stated goal of Federal Rule of Civil Procedure 1 is "to secure the just, speedy, and inexpensive determination of every action." In order to achieve the just, speedy, and inexpensive determination of this action, Moore will consent to the jurisdiction of the Bankruptcy Court over the Moore Claims if, but only if, this Court will immediately withdraw the reference of this adversary proceeding so that a speedy trial can be had before this Court.

If this Court is willing to adopt Moore's common sense approach to the just, speedy, and inexpensive determination of all of the claims asserted in this action, then it need not address the issues raised in the next 13 pages of this brief addressing the topic of subject matter jurisdiction and should only address the far more simple issues raised at pages 30 to 39 *infra*.

## III.   The Bankruptcy Court Does Not Have Jurisdiction Over Any of the Moore Claims

The Bankruptcy Court does not have subject matter jurisdiction over any of the Moore Claims. The Moore Claims are state common law claims against Moore that purportedly accrued to Fund LLC long after the Plan was confirmed. They are quite remote from any matter in the Debtors' chapter 11 cases and do not involve the Plan at all. There can be no benefit to the Debtors' estates vesting the Bankruptcy Court with "arising-in" subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b) – because the Estates no longer exist. The Moore Claims do not relate to the Debtors' chapter 11 cases; they are merely state law claims of a limited liability company that accrued in the course of its business operations.

Fund LLC has argued that the Plan, the Specific Referral Order, and the many Sale Orders all vest the Bankruptcy Court will subject matter jurisdiction over the Moore Claims.

Fund LLC fails to realize that Moore was never a party to any of those orders, nor was he served with any of them save the final US Mills Sale Order involving the sale to Susquehanna. Even if he was, none of the orders can be construed to grant the Bankruptcy Court subject matter jurisdiction over the Moore Claims.

Fund LLC, a Delaware limited liability company, has no special status that mandates that the Moore Claims may be tried in Bankruptcy Court. The Plan has been confirmed. The Debtors no longer exist; nor do their bankruptcy estates. Thus there is no estate that stands to benefit from the acts of its trustee (moreover, there is no trustee). Here, we have a private limited liability company (Fund LLC) that is seeking relief against Moore on certain state law claims that it is asserting as a purported creditor of Chadmoore.

Fund LLC is an asset manager. It possesses no more authority or standing in Bankruptcy Court than what the Plan gave it; it is not a representative of the Debtors nor their bankruptcy trustees. The Bankruptcy Court so held. (Tr. at 76:21-22.) Accordingly, there is no basis for the Moore Claims to be before the Bankruptcy Court.

## A.     The Moore Claims Do Not Arise In, Under, or Relate to the Debtors' Cases

The subject matter jurisdiction of bankruptcy courts was substantially altered in 1984 to address the Supreme Court's opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), which held that the Bankruptcy Act of 1978 violated Article III of the U.S. Constitution. *Id.* at 87. Presently, pursuant to 28 U.S.C. § 1334(b) and § 157(b) specifically, bankruptcy courts may "hear and determine" cases under the Bankruptcy Code and core proceedings that arise under the Bankruptcy Code or arise in a bankruptcy case. In matters that merely relate to a bankruptcy case, Section 157(c)(1) provides that bankruptcy courts may

only submit proposed findings of fact and conclusions of law to the district court that are subject to de novo review[1].

The analysis of subject matter jurisdiction is further narrowed when a plan has been confirmed. *Kassover v. Prism Venture Partners, LLC (In re Kassover)*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006). Consequently, a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute. *Id.* The bankruptcy court only retains subject matter jurisdiction to the extent that the plan provides for it. *Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Coy, (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993). Further, post-confirmation claims are narrowed to include only those claims or matters that pertain to the implementation or execution of a plan. *Liberty Mut. Ins. v. Lone Star Indus.*, 313 B.R. 9, 15 (D. Conn. 2004); *Urban Box Office Network, Inc. v. Interfase Managers, LP (In re Urban Box Office Network, Inc.)*, No. 01 Civ 8854 (LTS) (THK), 2003 U.S. Dist. Lexis 22675, at *11 (S.D.N.Y. Dec. 18, 2003); *see Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). Because the Plan provided for the liquidation of the Debtors' assets, jurisdiction must be construed more narrowly than if it provided for the reorganization of the Debtors. *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995). This posture also precludes the traditional estate effects analysis because the Debtors' estates no longer exist. *Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co.)*, No. 01 Civ. 165 (WHP), 2002 U.S. Dist. Lexis 8609, at *13 (S.D.N.Y. May 14, 2002); *Penthouse Media Group*

---

[1]  Here, Moore timely asserted a demand for a trial by jury, thus obviating any need for findings of fact or conclusions of law by any court.

*v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) ("The estate comes to an end, and ceases to exist. Accordingly, the outcome of a post-confirmation proceeding cannot affect the estate." (citations omitted)). Post-confirmation, a bankruptcy court may retain limited jurisdiction "but it may not keep the [debtor] corporation in 'perpetual tutelage' by exercising control ... over controversies between the reorganized corporation and third parties." *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 57 (E.D.N.Y. 1999) (quotation marks omitted). Bankruptcy courts do not have jurisdiction over post-confirmation disputes that may increase the recovery to the beneficiaries of the post-confirmation entity because such a rationale "could endlessly stretch a bankruptcy court's jurisdiction." *Penthouse Media Group v. Guccione (In re General Media, Inc.)*, 335 B.R. 66 (Bankr. S.D.N.Y. 2005). Most apposite to this action, courts frown upon post-confirmation entities that "come running to the bankruptcy court every time something unpleasant happens." *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

First, there cannot be a dispute that the Moore Claims are not a "case under title 11." They are claims filed in an independent adversary proceeding. Second, they are indisputably not claims that "arise under title 11." They are state common law claims that are not moored to any cause of action or special power created by the Bankruptcy Code. *See Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 757 (S.D.N.Y. 1994); *Finger v. County of Sullivan Indus. Dev. Agency (In re Paramount Hotel Corp.)*, 319 B.R. 350, 356 (Bankr. S.D.N.Y. 2005).

Third, the Moore Claims are not "arising-in" claims. As post-confirmation claims, the Moore Claims cannot be considered core claims because they clearly arose after the Plan was confirmed.

The Moore Claims hinge on Fund LLC's purported standing as a creditor of Chadmoore. Fund LLC did not – and indeed obviously cannot -- aver that it did business with Chadmoore before the Plan was confirmed. Even assuming the Moore Claims have a pre-confirmation nexus, they also are independent of a core bankruptcy function, such as the enforcement of the Sale Orders. Arguably, to the extent Fund LLC seeks relief against the purchaser, Sunset, in connection with its default under the US Mills sale agreements, such claims may be related to the Plan. However, the Moore Claims fall well outside of these bounds. They do not arise from any rights in the Sale Orders and do not require interpretation of those orders nor of the Plan (more on that below). The Sale Orders and the Plan cannot inform the Court whether Moore owed a fiduciary duty to Fund LLC and breached it or whether Fund LLC can prove a right to avoid transfers made by Chadmoore to Moore. In fact, the Sale Orders related to the sale to Sunset were not even served on Moore or Chadmoore. To find that the Moore Claims are connected to the Sale Orders or to Fund LLC's assets would create an exception that would swallow the rule. *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999). Accordingly, the Moore Claims do not arise in a bankruptcy case.

Fourth, the Moore Claims do not relate to a bankruptcy case. The Moore Claims are state common law claims that accrued well after the Plan was confirmed; thus, they do not arise under the Plan. The district court in *Falise* held that there was no bankruptcy subject matter jurisdiction to entertain contribution claims by a post-confirmation trust against third-party tobacco companies. *Falise*, 241 B.R. at 56-58. Just as in *Falise*, the Moore Claims are claims asserted by a post-confirmation entity against a third party that has no nexus to pre-confirmation activity. Obtaining damages for Moore's breach of a very recently created alleged fiduciary duty

does not pertain to Fund LLC's implementation or execution of the Plan.  In this respect the

Moore Claims are exactly like the trademark infringement claim the District Court dismissed in

*Singer.  Singer Co.*, 2002 U.S. Dist. Lexis 8609, at *22.  Like the infringement claim in *Singer*,

the Moore Claims have no connection to the implementation or execution of the Plan.

> *Grimes v. Graue (In re Haws)*, 158 B.R. 965 (Bankr. S.D. Tex. 1993), is also

consistent with these jurisdictional principles and has the added benefit of having dealing with

the very same type of claim asserted by Fund LLC, namely breach of fiduciary duty that

allegedly arose post-confirmation.  *See Binder v. Price Waterhouse & Co., LLP (In re Resorts*

*Int'l, Inc.)*, 372 F.3d 154, 168 (3d Cir. 2004) (endorsing the outcome of *Haws* under this

analysis).  In *Haws*, the liquidating agent sued the debtor's former business partner for breach of

fiduciary duty.  *Haws,* 158 B.R. at 967-68.  The *Haws* court reasoned that (1) such a claim,

which arose post-confirmation, was not related to the bankruptcy case because any recovery

would not effectuate the plan; (2) the claim did not require interpretation of the plan; and (3) the

claim required the exclusive application of non-bankruptcy law.  *Id.* at 971.  This Court reached

the same result in respect of a claim in *Penthouse Media Group v. Guccione  (In re General*

*Media, Inc.)*, 335 B.R. 66 (Bankr. S.D.N.Y. 2005).  There, the successor to the debtors asserted

several claims, including breach of fiduciary duty, against a former officer of the debtors.  *Id.* at

77.  The Bankruptcy Court held that it had no jurisdiction post-confirmation to hear the breach of

fiduciary duty claim because the claim had no nexus to the Plan and thus no benefit to the non-

existent estates.  *Id.* at 74-75.

> The facts and the resulting rationale of *Haws* and *General Media* are

indistinguishable from this case.  The Plan does not provide the Bankruptcy Court with

jurisdiction over Fund LLC's state common law claims against Moore; the Moore Claims have

no nexus with the Plan; any recovery would not benefit the Estates; and they exclusively require the interpretation of non-bankruptcy law. Accordingly, the Bankruptcy Court had no subject matter jurisdiction over the Moore Claims as claims related to a bankruptcy case under 28 U.S.C. § 1334(b).

### B.     The Plan Does Not Vest the Bankruptcy Court with Subject Matter Jurisdiction over the Moore Claims

Fund LLC has relied rely heavily on the Plan for its jurisdictional argument. Moore was never a party to the Plan and is not subject to its terms. Assuming arguendo that Moore was subject to the Plan, the Bankruptcy Court still would lack subject matter jurisdiction. Under the express terms of the Plan, the Bankruptcy Court did not retain jurisdiction to hear post-confirmation claims of Fund LLC of the character of the Moore Claims. (Plan at § 14.2.)

Any matter not specifically retained by the Bankruptcy Court under the Plan is to be heard by the District Court. The Second Circuit limits a bankruptcy court's post-confirmation jurisdiction rigidly to the scope specifically provided in a plan. *See Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993); *Friedberg v. Lewittes*, 192 B.R. 338, 341 (S.D.N.Y. 1996); *In re U.S.H. Corp.*, 280 B.R. 330, 334 (Bankr. S.D.N.Y. 2002) ("The Second Circuit is very clear as to the post-confirmation jurisdiction of the bankruptcy court. Post-confirmation jurisdiction exists only to the extent retained in an approved plan of reorganization."); *Portfolio Lease Funding Corp. No. 1 v. Seagate Tech., Inc. (In re Atl. Computer Sys., Inc.)*, 163 B.R. 704,706 (Bankr. S.D.N.Y. 1994). Moreover, "[t]he failure of a retained jurisdiction provision to affirmatively exclude certain matters from the [bankruptcy] court's post-confirmation jurisdiction should not be read as a grant of jurisdiction." *Falise*, 241 B.R. at 59. "To mandate that a plan actually demarcate those areas in which a bankruptcy court could not exercise post-confirmation jurisdiction would create a

22

massive expansion in the jurisdictional grant while conflicting with section 1141 (b) [providing that confirmation of a plan vests all property of the estate the debtor]." *Id.* Accordingly, the Plan's provisions governing post-confirmation jurisdiction by the Bankruptcy Court should be read narrowly. *Id.* Absent a specific grant of jurisdiction to the Bankruptcy Court clearly covering the Moore Claims, there can be no subject matter jurisdiction. Given the limited nature of the Bankruptcy Court's post-confirmation jurisdiction, any ambiguity should be resolved against the grant of subject matter jurisdiction to it over the Moore Claims.

Here, Article XIV of the Plan specifies the classes of subject matter over which this Court and the Bankruptcy Court have respectively retained jurisdiction. Section 14.1 sets forth a list of matters for which "the District Court shall withdraw the reference of the Chapter 11 Cases to the extent required to exercise original, exclusive jurisdiction." Section 14.2 contains an exclusive list of those matters over which the Bankruptcy Court has retained post-confirmation jurisdiction.

Section 14.1 provides that the District Court has broad post-confirmation jurisdiction, and that it "shall withdraw the reference" to exercise exclusive jurisdiction over the matters set forth in Section 14.1. These matters include the administration of the Liquidating LLCs pursuant to the Plan and in accordance with their LLC agreements; post-confirmation distributions; and "such other matters as may be related to the Plan, the administration of Claims, or the SEC Litigation." (Plan § 14.1.)

Fund LLC failed to abide by the Plan and asserted the Moore Claims in the Bankruptcy Court. Assuming arguendo that the Moore Claims fell within the scope of the Plan, they could fall only under Section 14.1. Subsection 14.1(a) is broadly written to encompass the "administration" of the Liquidating LLC.

The Moore Claims cannot be "Causes of Action" that can be asserted in the Bankruptcy Court because the Plan defines "Causes of Action" as any claim "by or for the benefit of any Estate, including Avoidance Actions." (Plan § 1.2.17.) The Estates never had any rights against Moore or Chadmoore. Accordingly, because neither Moore nor Chadmoore ever had any dealings with any Debtor, if the Plan is somehow construed to create subject matter jurisdiction over the Moore Claims, such jurisdiction can exist only in the District Court pursuant to Section 14.1(a) of the Plan.

Section 14.2, which governs the Bankruptcy Court's post-confirmation jurisdiction, is far more limited than Section 14.1. Section 14.2 qualifies its grant of jurisdiction by using the limiting term "only" in its description of the eight classes of subject matter over which the Bankruptcy Court may have jurisdiction. (Plan § 14.2.) Thus, although it appears that, under Second Circuit precedent, a plan of reorganization may vest a bankruptcy court with post-confirmation jurisdiction up to the limits permitted by applicable law, including 28 U.S.C. § 1334, that is not what the Plan provides. Rather, Section 14.2 expressly limits the Bankruptcy Court's jurisdiction to certain specified matters concerning the winding-up of the Debtors' bankruptcy cases – to wit:

    (a)    to hear and determine pending motions for the assumption or rejection of executory contracts or unexpired leases or the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including cure amounts, if any, required;

    (b)    to hear and determine any and all objections to the allowance or estimation of Claims;

    (c)    to hear and determine such litigation as may be commenced by the ICA Trustee in the Bankruptcy Court on or after the Effective Date to collect assets of the Debtors;

24

(d)    to hear and determine the matters specifically identified in section 14.3 hereof [concerning IBF Hotel];

(e)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)    to hear and determine applications for allowance of Professional Claims and all other applications for fees or reimbursement of expenses under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code (provided, however, that professionals engaged by the ICA Trustee shall seek approval of their final applications for allowance of fees and expenses from the District Court);

(g)    to determine requests for the payment of Claims under section 507(a)(l) of the Bankruptcy Code, including compensation and expenses of parties entitled thereto;

(h)    such other matters as the District Court may refer to the Bankruptcy Court; and

(i)    promptly after satisfaction of the matters set forth in (a) through (h) hereof, to enter a final decree closing the Chapter 11 Cases.

(Plan § 14.2.) Moreover, it is noteworthy that while the Plan contains detailed definitions for "Causes of Action" and "Avoidance Action," these defined terms nowhere appear in Section 14.2. Thus it is clear that to whatever extent subject jurisdiction over the Moore Claims can somehow be linked to the Plan, such jurisdiction can exist only in this District Court because the Moore Claims simply have nothing to do with any of the subject matters set forth in Section 14.2.

### C.    The Bankruptcy Court's Specific Referral Order Does Not Vest the Bankruptcy Court with Subject Matter Jurisdiction Over the Moore Claims

Fund LLC argues that the Specific Referral Order vests the Bankruptcy Court with subject matter jurisdiction over the Moore Claims. Moore was never a party to, nor

provided notice of, the Specific Referral Order; thus, it does not bind him. Assuming the Specific Referral Order is binding against Moore, it still would not vest the Bankruptcy Court with subject matter jurisdiction. In that order, this Court referred to the Bankruptcy Court only those "matters respecting the disposition of the Assets transferred to each Liquidating LLC." (Specific Referral Order at 3.)

The issue of subject matter jurisdiction rises and falls on the construction of the word "Assets" in the decretal language of the Specific Referral Order. The order itself states that undefined capitalized terms such as "Assets" "shall have the meanings ascribed to them in the Plan." (Specific Referral Order at 1 n.1.) The Plan defines "Assets" as "any and all assets of property of the Estates, including without limitation ownership interests in other entities, whether in the form of stock ownership, partnership interests, participations in joint ventures or otherwise, plus (b) for purposes hereof, the Escrowed Amount." (Plan § 1.2.7 (emphasis in original).) The Moore claims were never property of the Estates because they arose long after the Estates ceased to exist.

While Fund LLC points out that US Mills was an Asset of the Estates, it strains credulity to then argue that the Moore Claims are also "Assets" as that term is defined in the Plan.[2] The Moore Claims cannot be "Assets" because to qualify as "Assets" the Plan requires that they first must have been property of the Estates – as was US Mills.

The Estates were not in existence when the Moore Claims allegedly accrued. However much Fund LLC disagrees, the Estates cannot be revived to bootstrap the Moore Claims into the definition of "Assets." As a matter of law and by the terms of the Plan, the Estates ceased to exist when the Plan was confirmed and their assets were transferred to the

---

[2]  It is important to note that the same law firm and likely the very same team of attorneys drafted the Plan and the Specific Referral Order. Regardless of the scriveners' precise identities, both documents were filed under the signature of Steinberg, as ICA Trustee or as manager of the Liquidating LLCs.

Liquidating LLCs. The alleged claims against Moore accrued to Fund LLC after the specific

property falling under the term "Assets" was fixed, namely after the Plan was confirmed and US

Mills was transferred to Fund LLC.

Furthermore, even if the Moore Claims could fall under the term "Assets," Fund

LLC is not employing this action to effect their disposition, which is a further qualification of the

Specific Referral Order. This Court referred only those matters involving the **disposition** of the

"Assets." Disposition implies a sale or transfer. Fund LLC claims to be the proud owner of the

Moore Claims and is not utilizing this action to dispose of them. Rather, Fund LLC is better

understood to be utilizing this action to administer or generate value to the Moore Claims. In

sum, it appears that the drafters of the Plan and the Specific Referral Order have defined the

Moore Claims out of the Bankruptcy Court. They have made it clear that these claims do not –

cannot – belong in the Bankruptcy Court, because it is not vested with subject matter jurisdiction

to adjudicate them.

### D.    The Sale Orders Do Not Vest the Bankruptcy Court with Subject Matter Jurisdiction Over the Moore Claims

Fund LLC contends that the Sale Orders vest the Bankruptcy Court with subject

matter jurisdiction over the Moore Claims. As a long-standing matter of constitutional law, the

Sale Orders cannot enlarge the grant of subject matter jurisdiction to the Bankruptcy Court by

the Specific Referral Order or generally. *See Duryea Power Co. v. Sternbergh*, 218 U.S. 299,

302 (1910) ("when the foundation of its jurisdiction is thus narrowed, the action of the court

cannot enlarge it so as to deal with the facts. "); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d

746, 753 (5th Cir. 1995); *Gallucci v. Grant (In re Gallucci)*, 931 F.2d 738, 743-44 (11th Cir.

1991); *In re Digital Impact, Inc.*, 223 B.R. 1, 11 (Bankr. D. Okla. 1998); *see also Bowater S.S.*

*Co. v. Patterson*, 303 F.2d 369, 374 (2d Cir. 1962); *Standish v. Gold Creek Mining Co.*, 92 F.2d

662, 663 (9th Cir. 1937) ("It is fundamental that a rule of court cannot enlarge or restrict jurisdiction given by a statute."). This principle alone defeats this argument.

Assuming purely for argument's sake that the Sale Orders may serve as an independent basis to vest the Bankruptcy Court jurisdiction over subject matter beyond what was granted in the Specific Referral Order and the Plan, they each do not contain decretal language that capture the Moore Claims. Taking the last sale order, which is the only one actually served on Moore, it merely states in the eighth decretal paragraph that "[the Bankruptcy] Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the interpretation, implementation or enforcement of this Order." (IBF Bankruptcy Case, Doc. No. 555 dec. ¶ 5.) The Moore Claims have nothing to do with that order. The order does not contemplate adjudication of state common law claims that Fund LLC may have much later acquired under its purported status as a creditor of Chadmoore. That order had to do with Susquehanna closing on its purchase of US Mills upon the terms disclosed in Fund LLC's motion.

As for the prior Sale Orders pertaining to the attempts to sell US Mills to Sunset, Moore and Chadmoore were not served with any of those Sale Orders or their underlying motions. (IBF Bankruptcy Case, Doc. Nos. 499, 522, 528.) These orders are not binding on Moore. The only one that may arguably concern him is the third sale order in which Fund LLC "further revised" the terms of the US Mills sale to Sunset. (IBF Bankruptcy Case, Doc. No. 533.) The underlying motion and the order do not mention Chadmoore or Moore by name. (IBF Bankruptcy Case, 527, 533.) On jurisdiction, the order states: "[The Bankruptcy] Court shall retain exclusive jurisdiction with respect to all matters arising from or related to interpretation, implementation or enforcement of this Order, the Original Approval Order, the July 27 Order,

and the transactions contemplated by the Motion." (IBF Bankruptcy Case, Doc No. 533 dec. ¶ 6.) Fund LLC focuses on the language "all matters arising from or related to ... the transactions contemplated by the Motion." As discussed above in more detail, the Moore Claims have no connection to any transaction stated in that motion.

While Fund LLC contends that the Moore Claims are intertwined with the Fund LLC's financing agreements with Sunset or the Chadmoore Put, they are not. Fund LLC is utilizing a creditor of Chadmoore theory of standing to assert breach of fiduciary duty claims against Moore and attacking transfers made by Chadmoore to Moore. These claims do not arise from Sunset's agreement to buy US Mills or the financing agreements underlying the sale. They are claims that arose well after confirmation of the Plan and are derivative of Fund LLC's purported claim against Chadmoore, which allegedly makes Fund LLC a creditor of Chadmoore.

Fund LLC is not a debtor, debtor-in-possession, trustee, committee, or some other entity that would be authorized to litigate core claims (which the Moore Claims are definitely not) before the Bankruptcy Court to final judgment. The Moore Claims do not even relate to the Debtors' chapter 11 cases for the purposes of 28 U.S.C. § 1344. Fund LLC is merely forum shopping in the Bankruptcy Court to obtain punitive injunctive relief against Moore to wear him down financially and emotionally before Moore can reach the moment when he can defend himself before the jury he demanded in the appropriate forum.

This is not a new tactic for Fund LLC. Tellingly, during oral argument on a motion to withdraw the reference in another of Fund LLC's actions, Steinberg, Fund LLC's manager/lawyer, confessed to this forum shopping strategy when this Court pressed him on why he was bringing cases in the Bankruptcy Court when there was clearly no subject matter

jurisdiction over them. (*IBF Liquidating LLC, et al. v. Branch Banking Trust & Co.*, No. 04 Civ. 5848 (JES) (S.D.N.Y. Mar. 11, 2005), Transcript, Doc. No. 12 at 23:21-25, 24:1-6.)

It is elementary that orders entered by a court lacking subject matter jurisdiction are void. *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 362 (2d Cir. 2000) ("a judgment rendered by a court lacking subject matter jurisdiction is subject to collateral attack as void.") Thus the "judgments" entered against Moore should be vacated and the matter remanded to the Bankruptcy Court with instruction to dismiss Fund LLC's adversary complaint for lack of subject matter jurisdiction.

### IV.    Moore Cannot Be Liable to Fund LLC For Signing A Document That Fund LLC Knew Was Unenforceable and Is In Fact Unenforceable.

The Bankruptcy Court committed plain legal error in granting summary judgment in Fund LLC's favor on its claim against Moore based upon the legal theory of implied warranty of authority. *See, Broughton v. Dona*, 101 A.D.2d 897, 898 (App. Div. 1st Dep't 1984). While the Bankruptcy Court appropriately relied on the Restatement of Agency, it failed to consider that section of the Restatement that applies to the circumstances of this action, namely that (a) Steinberg knew, or should have known, that the Chadmoore Put was not enforceable because Chadmoore had dissolved and was in the process of winding up its affairs and (b) the Chadmoore Put is in fact unenforceable as a matter of law.

The Bankruptcy Court's holdings in its October Decision of the existence of questions of fact as to whether Fund LLC/Steinberg knew – or should have known – that the Chadmoore Put was not enforceable and whether the Chadmoore Put is in fact unenforceable cannot logically be reconciled with its grant of summary judgment against Moore on an implied warranty legal theory.

Thus even if the Bankruptcy Court had subject matter jurisdiction, its $1.8 million judgment in favor of Fund LLC and against Moore favor must be vacated.

All of these errors by the Bankruptcy Court are errors of law that this Court should review *de novo*.

## A.     The Bankruptcy Court Misapprehended the Law of Agency

In its October Decision the Bankruptcy Court held as a matter of law that Moore is liable to Fund LLC because Moore admits that (i) he physically signed the Chadmoore Put and (ii) he did not have authority from the Chadmoore Board of Directors to do so.  The Bankruptcy Court relied upon no facts other than these two admittedly, undisputed facts.

To support its holding against Moore, the Bankruptcy Court relied on that the Restatement (Third) of Agency § 6.10.  (October Decision, at 11-12)

The Bankruptcy Court committed plain legal error by failing to recognize that the Restatement addresses directly the undisputed circumstances of this case, namely that Steinberg (hence Fund LLC) knew (or should have known) that Chadmoore, a public company in the process of winding up its affairs under Colorado law, could not enter into the Chadmoore Put and therefore knew it was unenforceable.

The section of the Restatement quoted by the Bankruptcy Court is followed by an "**unless**" with three subparagraphs.  Restatement (Third) of Agency § 6.10 (2006).  The Bankruptcy Court's failure to mention, much less consider, the exception to the general rule applicable to this case constitutes plain legal error.  Section 6.10 of the Restatement (Third) of Agency when quoted in its entire relevant part states:

> A person who purports to make a contract, representation, or conveyance
> to or with a third party on behalf of another person, lacking power to bind
> that person, gives an implied warranty of authority the third party and is
> subject to liability to the third party for damages for loss caused by breach

of that warranty, including loss of the benefits expected from performance by the principal, **unless**

* * * * *

(3)     **the third party knows that the person who purports to make the contract, representation, or conveyance acts without actual authority.**

*Id.* The portion of the Restatement ignored by the Bankruptcy Court is printed in bold.

Since it is undisputed that Steinberg/Fund LLC knew that Chadmoore had dissolved and was in the process of winding up its affairs and, therefore, could not lawfully enter into the Chadmoore Put, Fund LLC necessarily knew that Moore lacked authority to sign it.

This exception to the general rule of agency was endorsed by the Third Department in *Broughton v. Dona*, 101 A.D.2d 897, 898 (N.Y. App. Div. 1984). The *Broughton* court found no liability of an insurance agent, who purportedly made a contract on behalf of his employer, an insurance company. The court first stated that "an agent can only be held liable for such damages if the contract would have been enforceable against his principal but for the agent's lack of authority." *Id.* The court continued, "an agent may only be liable to a third person for breach of implied warranty of authority if his lack of authority was not manifested to that person." *Id.* (citing Restatement (Second) of Agency, §§ 329, 331). The contract header stated that the contract required approval by the insurance company's home office, and the court held that "Plaintiff was thus clearly put on notice of [the agent's] lack of authority to bind [principal] and, for this reason also, may not recover for a breach of warranty of authority. *Id.* (*citing Duncan v. Peninger*, 624 F.2d 486, 490 (4th Cir. 1980), *cert. denied* 449 U.S. 1078 (1981)).

Similarly, Fund LLC knew Chadmoore was in dissolution. (October Decision, at 4) ("Steinberg knew that Chadmoore was in dissolution before he signed the Chadmoore Put.").

32

It is well-settled corporate law that a corporation in dissolution shall not carry on business unless it is for the purpose of winding up.[3]

Even if there were evidence that Moore had emphatically stated that he had authority to enter into the Chadmoore Put – which does not in fact exist -- Fund LLC, a sophisticated party, should have known otherwise. "One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority." *Fitzgibbon v. Abatelli Real Estate*, 214 A.D.2d 642, 644 (App. Div. 2d Dep't 1995). The undisputed fact that Fund LLC/Steinberg knew Chadmoore had dissolved was sufficient to create notice of Moore's lack of authority. A party cannot ignore a particular set of material facts when it is "placed on guard or practically faced with the facts" and does nothing to investigate them. *Crigger v. Fahnestock & Co.*, 230 R.3d 230, 234 (2d Cir. 2006) (quotation marks omitted). Under New York law, such a person "will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (quotation marks omitted); *see Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322 (1959).

First, the Bankruptcy Court found that whether Fund LLC reasonably relied on Moore's execution of the Chadmoore Put is a question of fact. (October Decision, at 15.) Second, the Bankruptcy Court found that Fund LLC's standing as a creditor of Chadmoore is a question of fact. *Id.* at 17. And third, the Bankruptcy Court found that the Chadmoore Put's

---

[3] *See*, N.Y. B.C.L. § 1005 (2007) ("After dissolution: (1) The corporation shall carry on no business except for the purpose of winding up its affairs."); Colo. Rev. Stat. 7-114-105 (2007) (A dissolved corporation continues its corporate existence but may not carry on any business except as is appropriate to wind up and liquidate its business and affairs."). While arguably Steinberg may be excused by his professed ignorance of Colorado corporate law, any member of Kaye Scholer should be presumed to have passing familiarity with this fundamental principle of New York corporate law, which not unremarkably proves to be the same as Colorado law.

validity and enforceability is a question of fact. *Id.* at 15. It was therefore plain error to find, as a matter of law, that Moore's lack of authority was never manifested to Fund LLC.

       **B.**     **The Bankruptcy Court's October Decision Ignored The Settled Principle There Can Be No Implied Warranty of A Legally Unenforceable Contract**

      The Bankruptcy Court ignored the legal proposition that there can be no implied warranty claim when the underlying contract could not otherwise be enforced against the principal.[4] *Albert v. Dung*, 52 N.Y. 494, 500 (1873). In *Albert*, the Court of Appeals for the State of New York held that "an agent, who falsely represents his authority to make a contract on behalf of another, is not liable in contract or in tort, **unless the principal would have been bound by the contract made**, if the agent had such authority." *Id.* (emphasis supplied). The plaintiff in *Albert* sought to hold the defendant liable for a verbal two-year real property lease based upon an implied warranty of authority theory. *Id.* at 496. The lease was void under the statute of frauds doctrine. *Id.*

      The *Albert* court squarely addressed the issues faced by a plaintiff such as Fund LLC, stating "that a party was ignorant of the law, or that he confided in the promise of another, and acted upon it to his disadvantage, has never been held to be an answer to the statute." *Id.* at 498. The court further held that "[t]he plaintiff has not been injured by the misrepresentation, and has lost nothing; for he would have gained nothing if the representation had been true." *Id.* at 500. In response to plaintiff's claim of reliance, the court ruled that as a matter of law the plaintiff "had no right to rely upon a contract which, when made, the law declared void." *Id.* As

---

[4] In the Bankruptcy Court's October Decision, the court cited numerous authorities for the proposition that "in the case of agents executing contracts on behalf of dissolved corporations, those agents are personally liable for the contracts, even if the contracts did not [relate] to the winding up of the corporation." (October Decision, at 12-13.) It is unclear how this adds anything to the analysis here. Not one case cited by the Bankruptcy Court dealt with a legally unenforceable contract. The cases upon which the Bankruptcy Court relies all involve an agent, who falsely represents his authority to make a contract on behalf of another that if he had such authority would be legal.

for the damages allegedly suffered by the plaintiff, the *Albert* court had this to say: "If he incurred expenses on the faith of the promise, or relying upon the express assurance of the defendant that the corporation would sanction the contract, it is his misfortune; but it furnishes no ground of action." *Id.*

     *Albert* remains controlling law to this day. The principle was upheld by the Third Department in *Broughton v. Dona*, 101 A.D.2d 897, 898 (N.Y. App. Div. 1984). It is also echoed in the Restatement (Second) of Agency. *See* Restatement (2d) of Agency § 329 at comment j. Comment j of section 329 of the Restatement states that "[i]f ... the contract as made would have been unenforceable against the principal even though the agent were authorized, the agent is not liable unless, in spite of such unenforceability, the purported principal would have performed if he had authorized the agent to make the agreement." *Id.*

     The Bankruptcy Court held that whether as a dissolved Colorado corporation in the process of winding up its affairs Chadmoore could ever have lawfully entered into a transaction such as the Chadmoore Put was question of fact and thus could not be decided as a matter of law. (October Decision, at 17). Thus granting summary judgment against Moore was manifest legal error.

### V.     The Bankruptcy Court Erred in Entering a Preliminary Injunction That Was in All Practical Effect an Order of Attachment.

     Fund LLC's expressed purpose in filing this lawsuit is "to enforce the terms of the Chadmoore Put by requiring Chadmoore to purchase $2.5 million of the Debenture." (Motion ¶ 9 at 3.) The adversary complaint includes claims for breach of contract against Chadmoore and breach of fiduciary duty against Moore. (Complaint ¶¶ 110-15 at 18-19, ¶¶ 127-34 at 20-21.)

     Fund LLC sought a money judgment against Moore and the other defendants for their purported failure to pay the amount Plaintiff claims that they are obligated to pay Plaintiff

pursuant to the Chadmoore Put. A preliminary injunction may not be obtained by a plaintiff

seeking a money judgment for breach of contract. For example, in *Credit Agricole Indosuez v.*

*Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 543-44, 729 N.E.2d 683 (2000), plaintiffs were various

banking institutions which directed an action (including, as here, a claim for breach of fiduciary

duty) against a Russian bank and its guarantor to recover for the bank's default on unsecured

debentures. Reversing the trial court's order of attachment and preliminary injunction

prohibiting defendants from "dissipating, transferring, conveying or otherwise encumbering their

assets," the New York Court of Appeals held that the banking institutions were not entitled to a

preliminary injunction to protect what was primarily an action to obtain a money judgment.

      The United States Supreme Court reached the same conclusion in *Grupo*

*Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). Applying the well

established "general rule that a judgment establishing the debt was necessary before a court of

equity would interfere with the debtor's use of his property," the Supreme Court held that the

lower court had "no authority to issue a preliminary injunction preventing petitioners from

disposing of their assets pending adjudication of respondents' contract claim for money

damages." The lower court in *Grupo Mexicano* had issued the preliminary injunction requested

by investment funds which purchased unsecured notes issued by a Mexican toll road operator to

prevent the operator from "dissipating, transferring, conveying, or otherwise encumbering [the]

funds' right to receive or benefit from [the] government-issued toll road notes." *Id.* at 312-313.

The Court reasoned that, prior to obtaining a money judgment against the operator, the creditor

investment funds had no rights at law or in equity in the debtor toll road operator's property. *Id.*

at 330-333.

There was no evidentiary showing that Fund LLC did not have an adequate remedy at law based upon its rights, if any, that are rooted in the Chadmoore Put and no place else. Injunctive relief is proper only if the party seeking it has no adequate remedy at law, not when such equitable relief would be merely "helpful." *Bray v. City of New York*, 356 F. Supp. 2d 277, 286 (S.D.N.Y. 2004) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992); *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306, 83 L. Ed. 2d 388, 105 S. Ct. 459 (1984).

Here, the "tail" has completely wagged the "dog." The parties have consumed enormous resources dealing with issues that might be "helpful" to Fund LLC in satisfying a judgment while ignoring both the subject matter jurisdiction of the Bankruptcy Court and the bulk of the claims asserted in this action. Again, that Fund LLC has been excused from making its Rule 26 automatic disclosures and that the Bankruptcy Court has "stayed" consideration of Moore's motion challenging its subject matter jurisdiction speaks volumes about how badly things went wrong in the Bankruptcy Court.

**IV.    The Bankruptcy Court's Contempt Judgments Were Clearly Erroneous Because They Were Based Upon Speculation of Counsel Not Admissible Evidence**

The Bankruptcy Court's "judgments" finding Moore in contempt because he could not comply with so much of the Bankruptcy Court's "preliminary injunction" as required him to pay money he did not have into escrow are plainly erroneous because they have no evidentiary support.

As the Second Circuit has held, "a person charged with civil contempt is entitled to notice of the allegations, the right to counsel, and a hearing at which the plaintiff bears the

37

burden of proof and the defendant has an opportunity to present a defense." *Schoenberg v. Shapolsky Publishers*, 971 F.2d 926, 934-35 (2d Cir. 1992).

The Federal Rules of Evidence "govern proceedings in the courts of the United States and before the United States bankruptcy judges" and therefore define what is in fact evidence. *In re Oil Spill by the Amoco* Cadiz *Off the coast of France on March, 16, 1978,* 954 F.2d 1279, 1305 (7th Cir. 1992) ("The Federal Rules of Evidence are statutes, and district judges may not disregard statutes no matter how inconvenient or cumbersome they believe the rules to be."); *accord UNR Indus., Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1107 (7th Cir. 1991).

In this case, there is no "evidence" that Moore had (or has) the cash that the Bankruptcy Court required he deposit in an escrow account. Moore's sworn testimony as to his limited financial means is unrebutted by competent evidence. The Bankruptcy Court based its "contempt" findings upon nothing more than argument/speculation by Fund LLC's counsel/manager, Steinberg. Fund LLC offered no clear and convincing evidence of cash available to Moore with which to comply with the "preliminary injunction." What constitutes "evidence" is plainly a question of law.

What Steinberg was really complaining about was the fact that long before the events giving rise to this action occurred, Moore formed under Nevada law a number of "asset protection trusts." The assets of those trusts are not under Nevada law under Moore's control and available to satisfy Moore's obligations, if any, to Fund LLC. Indeed, that is the obvious purpose of any "asset protection trust."

Having transferred assets to asset protection trusts years before the events giving rise to the commencement of this adversary proceeding was in no way contempt of the

Bankruptcy Court's "preliminary injunction." The contempt judgments should be vacated for lack of evidentiary support.

## Conclusion

WHEREFORE, for the foregoing reasons, this Court should vacate all three judgments and either (a) dismiss this adversary proceeding for lack of subject matter jurisdiction or (b) preferably, accept Moore's agreement to submit the Moore Claims to the jurisdiction of the Bankruptcy Court upon the condition that this Court immediately vacate the reference of the Moore Claims to the Bankruptcy Court.

Dated: January 2, 2008
      New York, New York

BAINTON MCCARTHY LLC


By:  /s/ J. Joseph Bainton
      J. Joseph Bainton
Bainton McCarthy LLC
26 Broadway
Suite 2400
New York, New York 10004-1840
(212) 480-3500
*Attorneys for Robert Moore*

39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| INTERBANK FUNDING CORP., *et al.,* | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| IBF FUND LIQUIDATING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -against- | ) |
| | ) No. 07-CIV-10692 (WHP) |
| CHADMOORE WIRELESS GROUP, INC., *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ROBERT MOORE, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| -against- | ) **AFFIDAVIT OF SERVICE** |
| | ) |
| KAYE SCHOLER LLP, *et al.,* | ) |
| | ) |
| Third-Party Defendants. | ) |

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss. |
| COUNTY OF NEW YORK | ) |

Peter H. Choi, being duly sworn, deposes and says: I am not a party to this action, am over 18 years of age and reside in the County of New York, State of New York. On January 2, 2008, I served a true and correct copy of the *Appellant's Brief* via the Court's ECF System upon:

Arthur Steinberg, Esq.
Heath D. Rosenblat, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

- 1 -

Peter H. Choi

Sworn to and executed before me,
This 2nd day of January, 2008

**MICHAEL T. ROUSSEL**
**Notary Public, State of New York**
No. 01RO6156831
Qualified in Richmond County
Commission Expires December 4/20 10

- 2 -